UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

SHAKIR A. MITCHELL, # 450-764,   *

Plaintiff   *

v   *   Civil Action No. PX-17-2056

TINA STUMP, Warden, MRDCC,   *
OFC. BOLA AYENI, Corrections Officer,[1]
OFC. TAMIKA CARTER, Corrections Officer,   *

Defendants   *

## MEMORANDUM OPINION

On July 24, 2017, Plaintiff Shakir A. Mitchell filed a civil rights action against the Warden and two Corrections Officers at Maryland Reception Diagnostic Classification Center in Baltimore ("MRDCC"). Broadly construed, Mitchell challenges Defendants' failure to observe and supervise his walking to a shower in restraints, during which time he fell and was injured. Mitchell seeks money damages of $800,000.00 and an order compelling Defendants to provide "proper medical care" for his injuries, including an MRI. ECF No. 1 at 3. Mitchell has since been transferred to another institution; accordingly is request for injunctive relief as to Defendants is denied as moot.[2]

---

[1] The Clerk shall amend the docket to reflect the correct spelling of Defendants Ayemi and Carter's full names.

[2] Mitchell was injured December 19, 2016, while he was housed at MRDCC. On or before February 1, 2017, Mitchell was transferred to Patuxent Institution, and then to North Branch Correctional Institution ("NBCI"). While at NBCI, Mitchell filed an "Emergency Injunction" alleging that NBCI medical personnel were denying him diagnostic treatment and pain medication for the injuries sustained at MRDCC. The Court thereafter informed Mitchell that his allegations of substandard medical care at NBCI must be brought as a separate cause of action against Defendants. The Court also denied Mitchell's request for injunctive relief, but construed the pleading as a separate action brought pursuant to 42 U.S.C. § 1983, and opened a separate case on Mitchell's behalf. *See Mitchell v. Warden NBCI, et al.,* Civil Action No. PX-17-2430 (D. Md.). The Court also ordered Mitchell to supplement this new claim which he failed to do. As a result the Court dismissed the new case without prejudice on April 16, 2018. *Id.,* ECF Nos. 11 and 12.

Presently pending before the Court are Defendants' motions to dismiss or in the alternative for summary judgment in their favor. Defendants contend that dismissal is warranted because Mitchell failed to exhaust administrative remedies prior to initiating this suit and that Defendants are immune from suit in their official capacities. Additionally, Defendants Ayeni and Carter assert that dismissal is proper because the court lacks subject matter jurisdiction and, alternatively, summary judgment should be granted in their favor on the merits of Mitchell's claim. Warden Stump moves for dismissal or summary judgment, asserting she played no role in the incident. ECF No. 14. Mitchell opposes the dispositive motions and requests appointment of counsel. ECF Nos. 16, 17, 18. The Court has reviewed the pleadings and finds no hearing necessary. *See* Local Rule 105.6 (D. Md. 2016). For the following reasons, Defendants' dispositive motions are GRANTED and Mitchell's motion for appointment of counsel is DENIED.

## I. Factual Background

The parties do not dispute the following material facts. On December 19, 2016, Mitchell was one of six prisoners released from a cell for recreation and showers. Defendant Correction Officers Ayeni and Carter, together with Officer I. Nwachukwu,[3] placed three-piece restraints on these individuals including Plaintiff, in compliance with institutional policy. ECF No. 14-2, Ayeni Decl., ¶ 2. Neither Ayeni nor Carter remember specifically who placed Mitchell in restraints, and Mitchell's complaint is silent on this fact. *See* ECF No. 14-2, Ayeni Decl., ¶ 2; ECF No. 14-3. Carter Decl. ¶ 2. Mitchell was not under escort when he walked to the stairway and fell. ECF No. 14-2. Ayeni Decl., ¶ 3. Medical personnel were called at 5:08 p.m. Mitchell was taken to the medical unit and then returned to his cell at 5:44 p.m. ECF No. 14-2, Ayeni

---

[3] Nwachukwu is not a party to this action.

Decl., ¶ 3. MRDCC Post Orders state that once an inmate is placed in full restraints, "a CO [correctional officer] may escort the inmate within the institution," but escorting is not required. ECF No. 17-4, Post Order 110-1-31b, pp. 4-5.

Mitchell pursued an administrative remedy procedure ("ARP") grievance, contending that the injuries he sustained were the fault of DOC personnel. The grievance procedure culminated in proceedings before an administrative law judge ("ALJ"). Following a hearing, the ALJ found that Mitchell's fall was an accident which occurred through no negligence or fault of the Department of Corrections ("DOC") personnel. *See Mitchell v. Maryland DOC,* OAH No. DPSC-IGO-002V-17-28485, ECF No. 14-4. The decision was issued on December 12, 2017, several months after Mitchell had filed this federal suit.

## II. Mitchell's Motion for Appointment of Counsel

Mitchell moves for appointment of counsel to represent him because he is incarcerated and lacks legal training or other comparable education. ECF Nos. 16 and 18. The Court's power to appoint counsel under 28 U.S.C. § 1915(e)(1) is discretionary and appropriate only where an indigent claimant presents "exceptional circumstances" justifying the need for counsel. *Id*. at 170; *Miller v. Simmons*, 814 F. 2d 962, 966 (4th Cir. 1987). Such circumstances exist where a "pro se litigant has a colorable claim but lacks the capacity to present it." *See Whisenant v. Yuam*, 739 F. 2d 160, 163 (4th Cir. 1984), abrogated on other grounds by *Mallard v. U.S. Dist. Ct*., 490 U.S. 296, 298 (1989) (holding that 28 U.S.C. § 1915 does not authorize compulsory appointment of counsel). A pro se prisoner is not automatically entitled to counsel by virtue of bringing a civil rights claim. *See Evans v. Kuplinski*, 713 Fed. Appx. 167, 170 (4th Cir. 2017).

Upon careful consideration of the motions and documents filed by Mitchell, the Court finds that he has demonstrated the wherewithal to either articulate the legal and factual basis of

3

his claims himself or secure meaningful assistance in doing so. Moreover, the issues pending before the Court are not unduly complicated, and no exceptional circumstances exist to warrant the appointment of an attorney. Mitchell's motion is therefore denied.

## II.     Defendants' Motions

### A.     Standard of Review

Because the parties have submitted evidence outside the four corners of the Complaint and have been given reasonable opportunity to present all pertinent material, the Court will treat the motion as one for summary judgment. *See* Fed. R. Civ. P. 12(d). Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment shall be granted if the movant demonstrates that no genuine issue of disputed material fact exists, rendering the movant entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(d). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original). "The party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of [his] pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *See Bouchat v. Baltimore Ravens Football Club, Inc.,* 346 F. 3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The Court must view the evidence in the light most favorable to the non-movant, and draw all inferences in his favor without weighing the evidence or assessing witness credibility. *See Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F. 3d 639, 644-45 (4th Cir. 2002). Factually unsupported claims and defenses from proceeding to trial. *Bouchat,* 346 F. 3d at 526.

4

### B. Analysis

Mitchell contends that the acts or omissions of the Defendant correction officers contributed to his fall and the injuries sustained as a result. The Court views this claim as alleging a violation of Mitchell' right to be free from cruel and unusual punishment under the Eighth Amendment of the United States Constitution. Where inmates are subjected to sufficiently harsh conditions of confinement, an Eighth Amendment violation may lie. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) (conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment.) However, the defendants must do more than exhibit an ordinary lack of care toward the prisoner to be held liable for an Eighth Amendment violation. *Arnold v. South Carolina Dep't of Corr.,* 843 F. Supp. 110, 113 (D. S.C. 1994), citing *Whitley v. Albers,* 475 U.S. 312, 319 (1986). The prisoner must show that the defendants' conduct against the prisoner was "sufficiently serious," and that defendants acted with a "culpable state of mind" when failing to take steps to ensure the prisoner's safety. *Wilson v. Seiter,* 501 U.S. 294, 297-98 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (deliberate indifference requires state of mind more blameworthy than negligence). Mere negligence does not transform the conduct of prison personnel solely because the action was committed under color of state law. *See Thomas v. Zinkel,* 155 F. Supp. 2d 408, 414 (E.D. Pa. 2001) (slip and fall due to dangerous working condition caused by known leaking roof merely negligence); *Jenkins v. Simmons,* 2012 WL 5944959 *4 (D. S.C. 2012).

The individual Defendants argue that they are immune from suit pursuant to the Eleventh Amendment of the United States Constitution. Defendants are partially correct. Under the Eleventh Amendment, states as well as their agencies and departments are immune from suits in federal court brought by their citizens or the citizens of another state. *See Pennhurst State Sch.*

*and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989). While states can consent to such suits, and while the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code Ann., State Gov't § 12-202(a), the State has not waived its immunity under the Eleventh Amendment to suit in federal court. *See Carter v. Mayor and City Council of Baltimore*, 164 F. Supp. 2d 509, 514 (D. Md. 2001), *vacated on other grounds*, 39 Fed. Appx. 930; *Hopkins v. Baltimore City Det. Ctr.*, 2016 WL 470821 (D. Md. 2016).

With regard to individual Defendants, the Eleventh Amendment immunity analysis turns on whether the Defendants are sued in their individual or official capacities. Suits against state defendants in their official capacities are construed as suits against the office itself, and so sovereign immunity precludes suit. *Will*, 491 U.S. at 71. When defendants are sued in their individual capacities, however, they are not immune to suit under the Eleventh Amendment. *Hafer v. Melo*, 502 U.S. 21, 22 (1991). The United States Court of Appeals for the Fourth Circuit counsels that the Court must look to the substance of the pleadings to determine whether a defendant is sued in an individual or official capacity for Eleventh Amendment immunity purposes. *Biggs v. Meadows*, 66 F. 3d 56, 58 (4th Cir. 1995). In particular, the Court examines the relief requested, whether plaintiff has alleged the defendants acted pursuant to official customs or policies, and the nature of the defenses. *Id.* at 61.

Defendants were state employees acting in their official capacities when Mitchell fell. Accordingly, any claim for monetary damages arising from Defendants acting in their official capacities is barred by the Eleventh Amendment. *See Edelman v. Jordan*, 415 U.S. 651, 663 (1974) (citing *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459 (1945) (holding that where recovery must be paid from public funds in the state treasury, a suit is barred by the Eleventh

6

Amendment)).[4] However, a fair reading of the Complaint supports that Mitchell also intended to sue Defendants in their individual capacities. Mitchell, for example, has not alleged violations of a custom or policy typically associated with suits brought against defendants in their official capacities. Defendants likewise implicitly acknowledge that fact by arguing they are entitled qualified immunity, an affirmative defense available only to defendants sued in their individual capacities. ECF No. 14-1 at 14. *Biggs*, 66 F. 3d at 61 (citing *Kentucky v. Graham*, 473 U.S. 159, 167 (1985)). Because the Eleventh Amendment does not bar suit against Defendants acting in their individual capacities, summary judgment on this ground is denied.

Nonetheless, Mitchell's claims fail because the record evidence construed most favorably to Mitchell is insufficient to sustain a cognizable claim. Mitchell has averred only that he was placed in restraints, as mandated by Post Orders, that the restraint on his left foot was too tight, and then he fell down the stairs when he moved toward the shower. Mitchell does not identify who specifically placed the restraints on him. Nor does he allege how the Defendants, alone or in concert, took sufficiently serious adverse action against him so as to make out a violation of his civil rights. Indeed, only Defendant Ayemi specifically recalls being present when Mitchell fell. ECF No. 17. When construing the facts most favorably to Mitchell, at best he sustains a negligence claim against the unidentified officer who placed the restraint too tightly on his foot.[5] These facts are simply insufficient as a matter of law to make out an Eighth Amendment claim, and so summary judgment is proper as to all defendants on this basis.

---

[4] Under the Ex Parte Young exception to Eleventh Amendment immunity, state officials acting in their official capacities may be sued in federal court for prospective injunctive relief to prevent an ongoing violation of the Constitution or federal law. *See, e.g., Antrican v. Odom*, 290 F. 3d 178 (4th Cir. 2002). Mitchell's claim at present does not implicate such relief.

[5] To the extent that Mitchell's Complaint raises a negligence claim, the Court declines to exercise supplemental jurisdiction. *See Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

Alternatively, Defendants argue that dismissal is warranted because Mitchell failed to exhaust his administrative remedies prior to bringing suit in federal court. The Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e, provides that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). For purposes of the PLRA, the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003), *aff'd*, 98 Fed. Appx. 253 (4th Cir. 2004).[6]

Notably, administrative exhaustion under § 1997e(a) is not jurisdictional but is rather an affirmative defense to be pleaded and proven by defendants. *See Jones v. Bock*, 549 U.S. 199, 215-216 (2007); *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F. 2d 674, 682 (4th Cir. 2005). This Court may not consider an unexhausted claim. *See Bock*, 549 U.S. at 220; *Ross v. Blake*, __ U.S. __, 136 S.Ct. 1850, 1857 (2016). Therefore, a court ordinarily may not excuse a failure to exhaust. *Ross*, 136 S.Ct. at 1856 (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion")).

Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the

---

[6] Of particular importance here, the grievance process applies to a wide variety of claims related to conditions of confinement such as tort claims of assault and battery brought against corrections officers. *See McCullough v. Wittner*, 314 Md. 602, 552 A. 2d 881 (1989).

issues on the merits).'" *Id.* at 93 (quoting *Pozo v. McCaughtry*, 286 F. 3d 1022, 1024 (7th Cir. 2002) (emphasis in original)). The Court is also "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F. 3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F. 3d 678, 684 (7th Cir. 2006).

The Maryland Department of Public Safety and Correctional Services ("DPSCS") has established an "administrative remedy procedure" ("ARP") for "inmate complaint resolution." *See generally* Md. Code Ann. (2008 Repl. Vol.), Corr. Servs. ("C.S."), §§ 10-201 *et seq.*; Md. Code Regs. ("COMAR") 12.02.28.02(1) (defining ARP). The grievance procedure applies to the submission of "grievance[s] against . . . official[s] or employee[s] of the Division of Correction." C.S. § 10-206(a). Relevant DPSCS regulations define "grievance" to include a "complaint of any individual in the custody of the [DOC] against any officials or employees of the [DOC] arising from the circumstances of custody or confinement." COMAR 12.07.01.01(B)(7). A prisoner must "properly exhaust" the ARP process as a condition precedent to further review of his or her grievance. *See* COMAR 12.07.01.02(D); *see also* C.S. § 10-206(b).

A Maryland prisoner may file a grievance with the Inmate Grievance Office ("IGO") against any DOC official or employee. *See* C.S. § 10-206(a). However, if the prison maintains a grievance procedure approved by the IGO, the prisoner must first follow that institution's Administrative Remedy Procedure ("ARP") before filing a grievance with the IGO. *See* C.S. § 10-206(b). The uniform ARP is set forth in COMAR 12.02.28.01 *et seq.*

Pursuing an ARP involves multiple steps. First, a prisoner must file an initial ARP with his facility's "managing official" COMAR 12.02.28.02(D)(1), who is defined as "the warden or other individual responsible for management of the correctional facility." COMAR

12.02.28.02(B)(14). This ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. COMAR 12.02.28.09(B).

Second, if the managing official denies a prisoner's initial ARP or fails to respond to the ARP within the established time frame, the prisoner must note his appeal to the Commissioner of Corrections within 30 days. COMAR 12.02.28.14(B)(5). If the appeal is denied, the prisoner must then take the third step of filing a grievance with the IGO within 30 days.[7] COMAR 12.02.28.18; C.S. § 10-206(a); COMAR 12.07.01.05(B). If the grievance is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing. C.S. § 10-207(b)(1); *see also* COMAR 12.07.01.06(B). An order of dismissal constitutes the final decision for purposes of judicial review. C.S. § 10-207(b)(2)(ii). If a hearing is deemed necessary by the IGO, the hearing will be conducted by an administrative law judge with the Maryland Office of Administrative Hearings. *See* C.S. § 10-208; COMAR 12.07.01.07-.08; *see also* Md. Code Ann., State Gov't § 10-206(a)(1).

If the administrative law judge denies the prisoner all relief, that decision is considered a final agency determination. C.S. § 10-209(b)(1)(ii); COMAR 12.07.01.10(A)(2). However, if the ALJ concludes that the inmate's complaint is wholly or partly meritorious, the decision constitutes a recommendation to the Secretary of DPSCS. DPSCS must render a final agency determination within fifteen days after receiving the administrative law judge's proposed decision. *See* COMAR 12.07.01.10(B); C.S. § 10-209(b)(2)(c). The prisoner may then elect to file suit in federal court without first bringing his claim in state court. *See* 42 U.S.C. §1997e

---

[7] If the Commissioner fails to respond, the prisoner must file an appeal within 30 days of the date the response was due. COMAR 12.07.01.05(B)(2).

("PLRA"). *See, e.g., Pozo*, 286 F. 3d at 1024 ("[A] prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court.").

Mitchell contends that he fully exhausted administrative remedies sufficient to proceed in this Court. ECF No. 17, p. 3. Although Mitchell is correct that his administrative claims reached final agency determination, this occurred only *after* he filed suit in this Court. *See Neal v. Goord*, 267 F. 3d 116, 121-22 (2d Cir. 2001) (overruled on other grounds). Because the PLRA "makes exhaustion a precondition to filing an action in federal Court," the prisoner "may not exhaust administrative remedies during the pendency of the federal suit." *Freeman v. Francis*, 196 F. 3d 641, 645 (6th Cir. 1999). *See Kitchen v. Ickes*, Civil Action No. DKC-14-2022, 2015 WL 4378159, at *8 (D. Md. July 14, 2015); *see also Blackburn v. S. Carolina*, No. C A 006-2011-PMD-BM, 2009 WL 632542, at *1 (D.S.C. Mar. 10, 2009) *aff'd*, 404 F. App'x 810 (4th Cir. 2010); *Kaufman v. Baynard*, CIV.A. 1:10-0071, 2012 WL 844480 (S.D.W. Va. Feb. 3, 2012) *report and recommendation adopted*, CIV.A. 1:10-0071, 2012 WL 844408 (S.D.W. Va. Mar. 12, 2012); *Miller v. McConneha, et al.*, JKB-15-1349, 2015 WL 6727547, at *3-4 (D. Md. November 11, 2015). Mitchell filed his Complaint on July 24, 2017, nearly five months before the ALJ issued her final determination. Mitchell, therefore, has not exhausted his claim and so dismissal is proper on this alternative basis.

**III. Conclusion**

Based on the foregoing, the Court grants Defendants' motion. A separate Order follows.

Date: 9/18/18 /S/
Paula Xinis
United States District Judge

11